IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COMMUNITY STATE BANK, et al.,

                              Petitioners,

        v.

JAMES E. STRONG and
CYNTHIA A. CREWS,

                              Respondents.

1:04-cv-2609-WSD

## ORDER

This matter is before the Court on Respondents' Motion to Dismiss for Lack of Subject Matter Jurisdiction [3], Petitioners' Unopposed Motion to Extend Time [5],[1] and Petitioners' Motion Requesting Substitution of Exhibit B to Petitioners' Verified Petition to Compel Arbitration and Stay Judicial Proceedings [14].[2]

_____

[1] Petitioners move for an extension of time to respond to Respondents' Motion to Dismiss [5]. Petitioners' Motion to Extend Time is unopposed, and is GRANTED *NUNC PRO TUNC*.

[2] This Court's Standing Order 04-02 requires that personal identifiers such as financial account numbers and home address information be redacted from documents filed with the Court and made available to the public through the Court's electronic filing system. Exhibit B to Petitioners' Verified Petition to

## I.      BACKGROUND

This case arises out of loan transactions between Petitioners Community

State Bank, First American Cash Advance of Georgia, LLC and FAS Financial,

LLC (collectively, "Petitioners") and Respondents James Strong and Cynthia

Crews (collectively, "Respondents") in early 2004.  Petitioner Community State

Bank is a South Dakota state-chartered bank insured by the Federal Deposit

Insurance Corporation ("FDIC"), and its principal place of business is in South

Dakota.  (See Verified Petition to Compel Arbitration and Stay Judicial Proceedings

[1] ("Petition"), ¶ 1.)  Petitioners First American Cash Advance of Georgia, LLC

("First American") and FAS Financial, LLC ("FAS") are Tennessee limited liability

companies with their principal places of business in Tennessee.  (Id. at  ¶¶ 2-3.)

Petitioner First American acts as a servicer for Petitioner Community State Bank in

marketing, servicing and collecting payday loans in Georgia.  (Id. at ¶ 2.)

Respondents are Georgia residents.  (Id. at ¶¶ 4-5.)

---

Compel Arbitration and Stay Judicial Proceedings contains personal identifiers and
violates Standing Order 04-02.  Petitioners move the Court to substitute a redacted
version of Exhibit B for the original.  Petitioners' Motion Requesting Substitution
of Exhibit B to Petitioners' Verified Petition to Compel Arbitration and Stay
Judicial Proceedings is GRANTED.

The loans in question are typical "payday" loans:  small, short-term, high-interest loans in amounts under $500.  (<u>Id.</u> at Ex. A., ¶¶ 28-57.)[3]  Each of the Promissory Notes for the respective loans includes an Arbitration Agreement, which provides that all claims and disputes with respect to the loan must be individually resolved through binding arbitration.  (<u>Id.</u> at Exs. B, C.)

On August 6, 2004, Respondents filed an action in the State Court of Fulton County, Georgia, alleging the payday loan transactions violated Georgia statutory and common law (the "State-Court Action").  On behalf of themselves and all recipients of alleged payday loans from Petitioners for the last five (5) years, Respondents assert claims against Petitioners First American and FAS under various Georgia statutes, including the Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. § 16-4-1 <u>et seq.</u> ("Georgia RICO"), as well as common-law claims for conversion and conspiracy.  Respondents do not assert any federal-law claims in the State-Court Action, and did not name Petitioner

---

[3]  For a thorough discussion of payday lending and the legislative history in Georgia surrounding it, see the Eleventh Circuit's opinion in <u>BankWest, Inc. v. Baker</u>, 411 F.3d 1289, 1292-97 (11th Cir. 2005), *vacated, reh'g en banc granted,* <u>Bankwest, Inc. v. Baker</u>, No. 04-12420, --- F.3d ----, 2005 WL 3534218 (11th Cir. Dec 28, 2005).

Community State Bank or any national or state-chartered, FDIC-insured bank as a defendant in that action.

On August 31, 2004, pursuant to the Arbitration Agreements, Petitioners served Notices of Intent to Arbitrate on counsel for Respondents, stating that the claims asserted by Respondents in the State-Court Action are subject to mandatory arbitration.  (Petition ¶ 35, Exs. D, E.)  On September 1, 2004, counsel for Respondents rejected the Notices and advised Petitioners that they intended to move forward with the State-Court Action.  (Id. at ¶ 37, Ex. F.)  This prompted two actions by Petitioners.  First, Petitioners First American and FAS removed the State-Court Action to this Court and subsequently moved to stay and compel arbitration of the claims asserted in that case.  (See Strong, et al. v. First American Cash Advance of Georgia, LLC, et al., 1:04-cv-02610-WSD (N.D. Ga.) [1].)  Second, Petitioners commenced an independent cause of action in this Court by filing the Petition.  Petitioners in this case seek an order compelling arbitration of the claims asserted in the State-Court Action and enjoining that case pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA").  (See Petition Prayer for Relief.)  The State-Court Action and this action have proceeded along parallel tracks in this Court.

On September 17, 2004, Respondents moved the Court to remand the State-Court Action to the Fulton County State Court, arguing that the grounds for removal jurisdiction set out in the Notice of Removal do not support the exercise of federal jurisdiction.  (See Strong, 1:04-cv-02610-WSD, [5].)  On September 14, 2004, Respondents moved to dismiss this case for lack of jurisdiction.  (Resp'ts' Mot. to Dismiss [3].)  On December 13, 2005, the Court granted Respondents' motion to remand the State-Court Action to the Fulton County State Court.  (See Strong, 1:04-cv-02610-WSD, [38].)[4]  Respondents' motion to dismiss for lack of jurisdiction is now before the Court for decision.[5]

-----

[4]  Because the Court determined that it lacked removal jurisdiction in the State-Court Action, it did not decide the motion to stay and compel arbitration filed in that case.  The motion to stay and compel arbitration presumably is now before the Fulton County State Court for determination.

[5]  While the motions to remand and to dismiss were pending, the Eleventh Circuit considered the appeal in BankWest, Inc., et al. v. Baker, et al., 1:04-cv-00988-MHS (N.D. Ga.).  Because it concluded that the Eleventh Circuit's decision in BankWest likely would shed light on certain of the jurisdictional issues raised in these motions, the Court in March 2005 stayed the State-Court Action, as well as this case, pending a decision by the Eleventh Circuit.  On June 10, 2005, a panel of the Eleventh Circuit affirmed the district court's denial of the preliminary injunction application.  See BankWest, 411 F.3d at 1292-97.  Shortly thereafter, at the Court's request, the parties submitted supplemental memoranda addressing the impact of the Eleventh Circuit's decision in BankWest on the arguments made in support of and in opposition to the motion to remand and the motion to dismiss [24, 25].

In their supplemental memoranda, Petitioners argued that the BankWest panel

decision was incorrect, and requested that the Court continue to stay consideration of these motions pending a rehearing en banc by the Eleventh Circuit, or, in the alternative, a writ of certiorari from the Supreme Court.  (Pet'rs' Supplemental Mem. in Opp'n to Mot. to Dismiss at 2-5; <u>Strong</u>, 1:04-cv-02610-WSD, [36] at 4-6.)  The Court denied Petitioners' request with respect to the Motion to Remand, and decided this motion on December 13, 2005.  The Court's ruling did not rest on <u>BankWest</u>, but did cite the panel decision as persuasive authority with respect to the jurisdictional issues raised by the parties.

On December 28, 2005, the Eleventh Circuit granted the petition for rehearing en banc in <u>BankWest</u>, vacating the panel decision.  <u>BankWest, Inc. v. Baker</u>, No. 04-12420, --- F.3d ----, 2005 WL 3534218 (11th Cir. Dec 28, 2005).  In view of the Eleventh Circuit's decision, the Court re-assessed whether it should decide Respondents' Motion to Dismiss or continue to stay consideration of this motion until the Eleventh Circuit issues an en banc decision.  First, continuing to stay consideration of this matter until an en banc decision is reached will further delay an already long-delayed matter.  Respondents' motion to dismiss was filed in September 2004, and already has been pending for almost a year and a half.   It does not appear from the Court's review of the PACER on-line docket in <u>BankWest</u> that the Eleventh Circuit has set a schedule for en banc briefing and oral argument in that case.  Accordingly, staying consideration would necessarily involve allowing time for the Eleventh Circuit to set a briefing schedule, for the parties to submit and respond to appellate briefs, for the Eleventh Circuit to schedule and hear oral argument, for the en banc court to issue a written decision, and then for the parties in this proceeding to submit supplemental memoranda addressing the decision.  Thus, it is not unrealistic to state that the delay incurred in staying consideration pending an en banc decision could be a year or more.  Moreover, the en banc decision may not constitute a "final" decision, since Petitioners already have stated that if they are not satisfied with the en banc decision, they will petition the Supreme Court for certiorari.

Second, the Court believes it is unlikely that the en banc decision, when issued, will provide different or more significant guidance than the panel decision regarding the jurisdictional issues presented here.  If the en banc court concurs with the reasoning and result reached by the panel, then the <u>BankWest</u> decision

## II.   DISCUSSION

Federal courts are courts of limited jurisdiction, and a federal court must take care to ensure that it has jurisdiction for all cases that come before it.  Rembert v. Apfel, 213 F.3d 1331, 1333-34 (11th Cir. 2000).  "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises."  Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001).  Where, as here, subject-matter jurisdiction is challenged by a Rule 12(b)(1) motion, the court must evaluate whether the plaintiff has sufficiently alleged a basis of subject-matter jurisdiction.  Garcia v. Copenhaver, Bell & Assocs., 104 F.3d

---

retains its persuasive value.  If the en banc court reaches a contrary result, the Court believes it likely would do so without opining on the jurisdictional issues presented here.  Even if the en banc court reaches a contrary result and endorses the ordinary preemption arguments made by the appellants in that case, this decision would not be controlling with respect to the issue of complete preemption before this Court.  Having determined that the unlikely benefit of the guidance to be provided by an en banc decision in BankWest does not outweigh the substantial costs of further delay in this matter, the Court has resolved to decide the motion to dismiss rather than continue to stay consideration of it.

1256, 1261 (11th Cir. 1997).  The allegations in the complaint are taken as true for the purposes of the motion.  Id.

Petitioners seek an order compelling arbitration of the claims asserted in the State-Court Action and enjoining that case pursuant to the FAA.  It is settled that the FAA does not confer subject-matter jurisdiction.  See Household Bank v. JFS Group, 320 F.3d 1249, 1253 (11th Cir. 2003) ("The [FAA] does not provide an independent basis for a federal court's subject-matter jurisdiction."); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983) (holding that the FAA is "something of an anomaly in the field of federal court jurisdiction," because it gives federal courts the authority to compel arbitration, but does not by itself confer independent federal question jurisdiction).  Accordingly, a party requesting relief under the FAA must demonstrate an independent basis for jurisdiction, such as diversity jurisdiction under 28 U.S.C. § 1332(a) or federal-question jurisdiction under 28 U.S.C. § 1331.  See Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997) ("Section 4 [of the FAA] provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of

citizenship or some other independent basis for federal jurisdiction before the order can issue.").

In determining whether federal-question jurisdiction exists under the FAA, the court is not limited to the claims asserted in the case before it; federal-question jurisdiction may be based on the nature of the claims sought to be arbitrated. Tamiami Partners Ltd. ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Fla., 177 F.3d 1212, 1223 n.11 (11th Cir. 1999) (holding that a federal court assessing jurisdiction under the FAA should "look through" the petition to the underlying dispute between the parties to determine whether there is a federal question); Discover Bank v. Vaden, 396 F.3d 366, 373 (4th Cir. 2005) ("A federal court may therefore hear a § 4 petition to compel arbitration if, but for the arbitration agreement, subject matter jurisdiction over the case would otherwise exist by virtue of a properly invoked federal question in the underlying dispute.").

Petitioners assert three bases for jurisdiction.  First, they argue that the Court has federal-question jurisdiction because the well-pleaded allegations of the Petition demonstrate that Respondents could assert a claim against them under the federal Racketeer Influenced and Corrupt Organizations Act ("federal RICO").  (Pet'rs' Opp'n to Mot. to Dismiss [8] at 7-9.)  Second, Petitioners argue the Court has

federal-question jurisdiction because the claims asserted by Respondents in the

State-Court Action are completely preempted by Section 27 of the Federal Deposit

Insurance Act ("FDIA").  (Id. at 10-23.)  Third, they contend that the requirements

for diversity jurisdiction under 18 U.S.C. § 1332 are satisfied here.  (Id. at 23-25.)[6]

---

[6] In its supplemental briefing addressing BankWest, Petitioner Community
State Bank raises an additional theory of federal question jurisdiction:  the
"substantial questions of federal law" test discussed in Grable & Sons Metal
Prods., Inc. v. Darue Eng'g & Mfg., --- U.S. ---, 125 S. Ct. 2363, 2366-67 (2005)
(addressing a narrow category of federal "arising under" jurisdiction where federal-
question jurisdiction "will lie over state-law claims that implicate significant federal
issues . . . and thus justify resort to the experience, solicitude, and hope of
uniformity that a federal forum offers on federal issues.").  (See Pet'r Community
State Bank's Supplemental Opp'n to Mot. to Dismiss [24] at 2 n.2).  This ground
for federal jurisdiction was not raised in Petitioners' response to Respondents'
Motion to Dismiss and was argued for the first time in Petitioners' supplemental
briefing, in which the parties were directed to address only the impact of the
BankWest panel decision on their arguments concerning jurisdiction.  As a result,
this argument is not properly before the Court and will not be considered.  Further,
even if it were proper to consider it, the argument is without merit.  For the reasons
set out in Section II(B), infra, Section 27 does not completely preempt the claims
asserted by Respondents in the State-Court Action.  The issue of ordinary
preemption under Section 27 does not constitute a "significant federal issue"
justifying the resort to "the experience, solicitude, and hope of uniformity that a
federal forum offers" under Grable & Sons, since ordinary preemption is routinely
applied by state courts and federal courts alike.  See Geddes v. Am. Airlines, Inc.,
321 F.3d 1349, 1357 (11th Cir. 2003) ("We agree . . . that '[s]tate courts are
competent to determine whether state law has been preempted by federal law and
they must be permitted to perform that function in cases brought before them,
absent a Congressional intent to the contrary.'") (citing Ry. Labor Executives
Ass'n v. Pittsburgh & Lake Erie R.R. Co., 858 F.2d 936, 942 (3d Cir. 1988)).

### A.    Respondents' Potential Federal RICO Claim

Petitioners argue that the Court has federal-question jurisdiction over their claims under the FAA because the well-pleaded allegations of the Petition demonstrate that Respondents could assert a federal RICO claim against them. (Pet'rs' Opp'n to Mot. to Dismiss at 7-9.)  Petitioners rely on the Eleventh Circuit's decision in Household Bank v. JFS Group, 320 F.3d 1249 (11th Cir. 2003), to support their argument.  Their reliance is misplaced.

In Household Bank, recipients of tax refund anticipation loans (the "Borrowers") threatened to file state and federal-law claims against the bank which provided the loans (the "Bank").  320 F.3d at 1251-52.  In response, the Bank filed a declaratory judgment action in federal court, seeking a declaration that the arbitration provisions contained in the Borrowers' loan agreements were enforceable.  Id.[7]  The Borrowers moved to dismiss the declaratory judgment action for lack of subject-matter jurisdiction, arguing that the Borrowers' potential

---

This is especially true here, where Petitioners expressly request that the claims and defenses of the parties (including ordinary preemption) be submitted to an arbitrator, not a federal court, for decision.

[7]  H & R Block, the entity which provided tax preparation services for the Borrowers, joined the bank's declaratory judgment action as a plaintiff.  See Household Bank, 320 F.3d at 1252.

federal claims were insufficient to confer federal-question jurisdiction on the district court under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("DJA").  Id. at 1253-54.  The district court agreed, holding that federal-question jurisdiction exists in a declaratory judgment action only where the anticipated coercive action would "of necessity" arise under federal law, i.e., where the actual controversy between the parties presents a federal question within the district court's exclusive jurisdiction, such as a dispute regarding a copyright.  See id. at 1254.

The Eleventh Circuit reversed, concluding that "a federal district court has subject-matter jurisdiction over a declaratory judgment action if . . . a plaintiff's well-pleaded complaint alleges facts demonstrating the defendant could file a coercive action arising under federal law."  Id. at 1259.  The court held that this reading of the DJA was supported by the plain language of the statute, citing decisions from seven other circuits reaching the same conclusion.  Id. at 1258-59.

Household Bank does not apply here.  The court in Household Bank addressed federal-question jurisdiction under the DJA, and its reasoning and holding were limited to requests for declaratory judgments under that statute. Although the court referred to the FAA at the outset of its decision, it did so only to clarify that the FAA, like the DJA, was not itself a basis for subject-matter

-12-

jurisdiction over the Bank's claims, and that the Bank was required to demonstrate an independent basis for jurisdiction such as federal-question or diversity jurisdiction.  Household Bank, 320 F.3d at 1253.  Petitioners do not cite, nor did the Court's independent research locate, any authority for the proposition that a district court can exercise jurisdiction over claims under the FAA based on a potential federal claim that has not been invoked in the parties' underlying dispute. Compare Discover Bank, 396 F.3d at 373 (holding that a federal court can exercise federal-question jurisdiction over a petition to compel arbitration under Section 4 of the FAA on the basis of a "properly invoked" federal claim in the underlying dispute).  Indeed, Petitioners' interpretation of the FAA would permit parties to petition a federal court to compel arbitration of federal claims that have not yet been asserted by the respondent, simply because the petitioner believes that the respondent may or could file such a claim.  This is inconsistent with the well-established principle that a district court cannot compel arbitration of claims which have not yet been asserted in an underlying dispute between the parties.  See Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 725 F.2d 192, 195 (2d Cir. 1984) (holding that a petition to compel arbitration under Section 4 of the FAA is inappropriate where the party to be compelled has not commenced litigation and

therefore is not in default of an arbitration agreement between the parties); see also PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1067-68 (3d Cir. 1995) (holding that a cause of action under Section 4 of the FAA accrues once the party to be compelled demonstrates its intention to refuse arbitration "either by filing a complaint or by clearly manifesting a refusal to arbitrate in some other manner."). Accordingly, Petitioners fail to demonstrate the Court has jurisdiction over their FAA claims on the basis of Respondents' potential federal RICO claim.[8]

**B. Complete Preemption**

---

[8] Of course, that Respondents have not asserted a federal RICO claim in the State-Court Action does not preclude Petitioners from seeking a declaratory judgment that such a claim is subject to binding arbitration under the parties' Arbitration Agreements, provided that there exists an actual controversy with respect to the claim. See Downing, 725 F.2d at 195; Household Bank, 320 F.3d at 1259. Petitioners here do not assert a claim under the Declaratory Judgment Act. Even if they did, the Court would lack jurisdiction over this claim for the reasons set out in the Court's February 7, 2006 Order in Advance America, Cash Advance Centers of Georgia, Inc. v. King, et al., 1:04-cv-02765-WSD (N.D. Ga.). (See Advance America, 1:04-cv-02765-WSD, [17].)

**Under Section 27 of the FDIA**

Petitioners also argue federal-question jurisdiction exists because the state-law claims asserted by Respondents in the State-Court Action are completely preempted by Section 27 of the FDIA.   (Pet'rs' Opp'n to Mot. to Dismiss at 10-23.)  "Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims -- i.e., completely preempted."  Sullivan v. Am. Airlines, Inc., 424 F.3d 267, 272 (2d Cir. 2005); see also Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1281 (11th Cir. 2005) ("Under [the complete preemption] doctrine, Congress may preempt an area of law so completely that any complaint raising claims in that area is necessarily federal in character and therefore necessarily presents a basis for federal court jurisdiction.").  "[W]hen complete

-15-

preemption exists, there is 'no such thing' as the state action, since the federal claim is treated as if it appears on the face of the complaint because it effectively displaces the state cause of action." Lontz v. Tharp, 413 F.3d 435, 441 (4th Cir. 2005) (internal citation omitted). To demonstrate federal-question jurisdiction on the basis of complete preemption, Petitioners must show that (a) Section 27 of the FDIA completely preempts state-law usury claims against state-chartered banks; and (b) that Respondents' state-law usury claims against Petitioners First American and FAS fall within the class of claims completely preempted by Section 27.[9]

   1. *Section 27*

---

 [9] Although the concepts of complete preemption and defensive preemption "are linguistically related, they are not as close kin jurisprudentially as their names suggest." Lontz, 413 F.3d at 440. Unlike complete preemption, defensive preemption does not provide a district court with federal subject-matter jurisdiction: "[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987); see also Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999) (holding that defensive preemption "does not furnish federal subject-matter jurisdiction under 28 U.S.C. § 1331 . . . ."). Defensive preemption, which is alternately referred to as "ordinary preemption" in case law, "simply declares the primacy of federal law, regardless of the forum or the claim." Lontz, 413 F.3d at 440. "Many federal statutes -- far more than support complete preemption -- will support a defendant's argument that because federal law preempts state law, the defendant cannot be held liable under state law." Sullivan, 424 F.3d at 272-73.

Petitioners assert that Section 27 completely preempts state-law usury claims against state-chartered banks. Complete preemption is rare, and a party seeking to establish complete preemption has a heavy burden. See Lontz, 413 F.3d at 441 ("Federalism concerns strongly counsel against imputing to Congress an intent to displace a whole panoply of state law . . . absent some clearly expressed direction. The presumption, in other words, is against finding complete preemption."); Smith v. GTE Corp., 236 F.3d 1292, 1311 (11th Cir. 2001) ("[A]lthough the Supreme Court recognizes the existence of the complete preemption doctrine, the Court does so hesitatingly and displays no enthusiasm to extend the doctrine into [new] areas of law . . . ."). The United States Supreme Court has found this heavy burden satisfied only with respect to three statutes: Section 301 of the Labor-Management Relations Act ("LMRA"), Section 502(a) of the Employee Retirement Insurance Security Act ("ERISA"), and Sections 85 and 86 of the National Banking Act ("NBA"). See Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 558-62 (1968) (LMRA); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66 (1987) (ERISA); Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 7-11 (2003) (NBA).

"The 'touchstone' of federal jurisdiction under the complete preemption doctrine is 'Congress's intent'." Smith, 236 F.3d at 1312 (citations omitted). The

Court must "determine whether Congress not only intended a given federal statute to provide a federal defense to a state cause of action that could be asserted either in a state or federal court, but also intended to grant a defendant the ability to remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal one." Id. at 1312 (quoting BLAB T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc., 182 F.3d 851 (11th Cir. 1999)) (internal punctuation omitted).  In making this determination, the Eleventh Circuit has held that the following factors should be considered:  "whether the state claim is displaced by federal law under an ordinary preemption analysis, whether the federal statute provides a cause of action, what kind of jurisdictional language exists in the federal statute, and what kind of language is present in the legislative history to evince Congress's intentions." BLAB, 182 F.3d at 857.

Petitioners do not point to any provision in Section 27, express or implied, or in its legislative history to support the required showing that Congress intended for complete preemption to apply here.  Its argument concerning complete preemption is based exclusively on Section 27's similarity to Sections 85 and 86 of the NBA.  (See Petition ¶ 44; Pet'rs' Opp'n to Mot. to Dismiss at 11-13.)  The Supreme Court held in Beneficial that state-law usury claims against a national bank

can be removed to federal court because Sections 85 and 86 of the NBA

completely preempt such claims.  539 U.S. at 11.  In reaching this conclusion, the

Court was careful to distinguish between complete preemption and defensive

preemption:

> If, as petitioners asserted in their notice of removal, the
> interest that the bank charged to respondents did not
> violate § 85 limits, the statute unquestionably pre-empts
> any common-law or Alabama statutory rule that would
> treat those rates as usurious.  The section would therefore
> provide the petitioners with a complete federal defense.
> Such a federal defense, however, would not justify
> removal.  Only if Congress intended to provide the
> exclusive cause of action for usury claims against national
> banks would the statute be comparable to the provisions
> that we construed in the [cases addressing complete
> preemption under the LMRA and ERISA].

Id. at 2063-64.  Relying on its "longstanding and consistent construction of the

[NBA] as providing an exclusive federal cause of action for usury against national

banks," as well as the "special nature of federally chartered banks," the Court held

that Sections 85 and 86 completely preempted state-law usury claims against

national banks:  "there is, in short, no such thing as a state-law claim of usury

against a national bank."  Id. at 2064.

Here, Petitioners allege that because Section 27 should be read *in pari*

*materia* (*i.e.*, interpreted consistently) with the NBA, Section 27 likewise authorizes

-19-

complete preemption with respect to state-law usury claims against state-chartered

banks.  (Petition ¶ 44; Pet'rs' Opp'n to Mot. to Dismiss at 11-13.)  The Court

finds this argument insufficient to establish that Section 27 completely preempts

state-law usury claims against state-chartered banks.

The plain language and historical context of Section 27 supports Petitioners'

argument that it was enacted to ensure equal treatment of state-chartered banks and

national banks with respect to state-law usury claims.  See Greenwood Trust Co. v.

Commonwealth of Mass., 971 F.2d 818, 826-27 (1st Cir. 1992) ("Congress tried to

level the playing field between federally chartered and state-chartered banks when it

enacted [Section 27].") (citing 126 Cong. Rec. 6,907 (1980); 126 Cong. Rec. 6,900

(1980)); see also 12 U.S.C. § 1831d(a) (stating that the purpose of Section 27 is

"to prevent discrimination against State-chartered [banks] . . . with respect to

interest rates . . . .").  This equal treatment is reflected in the strong defensive

preemption language found in Section 27, which provides that state-chartered

banks are permitted to charge the interest rates prescribed by this section

"notwithstanding any State constitution or statute which is hereby preempted for

-20-

the purposes of this section . . . ."  12 U.S.C. § 1831d(a).[10]  The Court also agrees

that, with respect to the interpretation and application of the federal cause of action

for usury against state-chartered banks created by Section 27, Sections 85 and 86

of the NBA serve as valuable guides.  See Greenwood Trust, 971 F.2d at 827

("The historical record clearly requires a court to read the parallel provisions of [the

FDIA] and the [NBA] *in pari materia*.").

The Court is not persuaded, however, that interpreting these statutes

consistently means that Section 27 necessarily completely preempts state-law usury

claims against state-chartered banks.  First, that Section 27 is viewed *in pari*

*materia* with Sections 85 and 86 of the NBA is not sufficient, by itself, to establish

that Section 27 is among the rare federal statutes giving rise to complete

preemption.  See Saxton v. Capital One Bank, 392 F. Supp. 2d 772, 782-83 (S.D.

_____

[10]  Of course, this strong express preemption is not sufficient, standing alone, to justify a finding of complete preemption.  See Lontz, 413 F.3d at 444 ("Even though their ordinary preemptive power is great, sections 7 and 8 [of the National Labor Relations Act] do not on their own terms confer federal jurisdiction and therefore cannot be the basis of removal through complete preemption."); Sullivan, 424 F.3d at 276 ("[R]emoval of state-law claims based on complete preemption becomes possible not solely by virtue of the preemptive force of a substantive federal statute such as the LMRA, ERISA, or [NBA], but rather because a federal statute with completely preemptive force also gives rise to original jurisdiction, and as a consequence allows removal under 28 U.S.C. § 1441.").

Miss. 2005) (rejecting the defendant's argument that state-law claims against state-chartered banks were subject to complete preemption under Section 27 based on its similarity to Sections 85 and 86 of the NBA:  "Even if [Section 27] is patterned after §§ 85 and 86 of [the NBA] and provides a federal cause of action for usury by a state-chartered bank, this factor alone does not establish complete preemption.").

In addition, significant to the Supreme Court's finding of complete preemption under the NBA in <u>Beneficial</u> was the special character of national banks: "In finding that the [NBA] completely preempted state law governing interest rates, <u>Beneficial</u> stressed that national banks were the subject of unique national concern. Such banks are, after all, chartered at the national level and explicitly not governed by state law."  <u>Lontz</u>, 413 F.3d at 441.  This "unique national concern" is absent here.  Unlike national banks, the banks covered by Section 27 are chartered at the state level and are explicitly governed by state law in many and diverse respects. Indeed, the FDIA itself expressly contemplates that states will retain substantial regulatory authority over state banks insured by the FDIC.  <u>See</u> 12 U.S.C. §§ 1813 (defining "State bank supervisor" as the state officer, agency or other entity with "primary regulatory authority" over state banks); 1820(h)(1)(A) (granting State bank supervisor regulatory authority over state banks with respect to state laws

governing, among other things, fair lending and consumer protection); 1831a(i) (providing that the section governing activities of insured state banks "shall not be construed as limiting the authority of . . . any State supervisory authority to impose more stringent restrictions")).  Simply put, Congress has allowed two regulating systems -- one state and one federal -- for organizing, chartering and operating banking institutions.

Petitioners do not address this difference in their briefing, nor do they demonstrate that complete preemption is necessary for Section 27 to provide parity with respect to the permitted interest rates charged by state-chartered and national banks.  The strong express preemption set out in Section 27 protects state-chartered banks from discrimination.  State courts are fully competent to interpret the defensive preemption provided by Section 27 and to apply this preemption appropriately when required.  See Geddes v. Am. Airlines, Inc., 321 F.3d 1349, 1357 (11th Cir. 2003) ("We agree . . . that '[s]tate courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them, absent a Congressional intent to the contrary.'") (citing Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co., 858 F.2d 936, 942 (3d Cir. 1988)).  Because

Petitioners fail to demonstrate that Section 27 should be included among the few federal statutes which authorize complete preemption, the Court cannot find that Respondents' state-law usury claims in the State-Court Action are completely preempted and therefore confer federal-question jurisdiction on the Court in this action.

2.    *Respondents' State-Law Usury Claims*

Even if Section 27 completely preempted state-law usury claims against state-chartered banks, this does not mean Respondents' claims in the State-Court Action are automatically considered federal in nature.  The proposed complete preemption of Section 27 applies to all state-law usury claims against state-chartered banks.  Respondents did not assert any claims against a state-chartered bank; their state-law usury claims are asserted only against Georgia payday stores.  Consequently, the Court must determine whether Respondents' state-law usury claims against Petitioners First American and FAS would be within the class of claims subject to complete preemption under Section 27, if such preemption existed.  Having carefully reviewed the arguments of the parties, the Court concludes Respondents' claims are outside the complete preemption of Section 27, assuming such complete preemption exists.

-24-

This conclusion is supported by analogy to state-law usury claims involving loans originated by national banks.  After Beneficial, it is clear that state-law usury claims against a national bank are subject to complete preemption under the NBA. See 539 U.S. at 11.  However, where a plaintiff asserts state-law usury claims against an in-state agent of a national bank, and does not name the national bank as a defendant, courts have held that the NBA's complete preemption is not applicable, notwithstanding that such claims involve a loan originated by a national bank.

In Long v. Ace Cash Express, Inc., No. 3:00-cv-1306, 2001 WL 34106904 (M.D. Fla. June 18, 2001), the plaintiff brought state-law usury claims against an in-state payday store.  The complaint did not name a national bank as a defendant -- the plaintiff alleged that although the loan documents showed a national bank as the originator of the loan, the payday store was the true lender.  Id. at *1.  The defendant payday store removed the case to federal court on the basis of complete preemption, arguing that the loan at issue was obtained from a national bank and therefore any claim for usury based on the loan was completely preempted by the NBA.  Id.  The court rejected this argument, holding that the plaintiff's decision not to name the national bank as a defendant meant the NBA did not apply.  Id.  The

court noted that the issue of which entity was the "true lender" under the state's usury law was a matter of substantive law and would be addressed by the state court after remand.  Id.

Other courts have similarly rejected the removal of state-law usury claims against non-national banks on the basis of complete preemption under the NBA. See, e.g., Colorado v. Ace Cash Express, Inc., 188 F. Supp. 2d 1282, 1284-85 (D. Colo. 2002) (holding complete preemption of the NBA did not apply, and removal was thus improper, where the plaintiff's state-law usury claims were brought against the payday store agent only, notwithstanding the defendant's argument that the claims constituted an indirect attack on the national bank's right to charge the interest permitted under the NBA); In re Cmty. Bank of N. Va., 418 F.3d 277, 296-97 (3d Cir. 2005) (holding removal on the basis of complete preemption was improper where the complaint asserted claims only against non-bank purchasers of mortgage loans, and did not name a national or state-chartered, federally insured bank as a defendant); Green v. H&R Block, Inc., 981 F. Supp. 951, 955 (D. Md. 1997) ("There is no support for the proposition that an entity that acts in concert with, or is in privity with, a national bank is entitled to remove state claims to federal court under the NBA.").  Cf. Goleta Nat'l Bank v. Lingerfelt, 211 F. Supp. 2d 711,

717-18 (E.D.N.C. 2002) ("While it is true that the NBA does preempt state efforts to regulate the interest collected by national banks, the NBA patently does not apply to non-national banks.") (addressing defensive preemption).[11]

The distinction between state-law usury claims against national banks and claims against in-state payday agents of such banks was implicitly acknowledged by the Eleventh Circuit in <u>Jenkins v. First American Cash Advance of Georgia, LLC</u>, 400 F.3d 868 (11th Cir. 2005).  In that case, the plaintiff brought state-law usury claims against in-state payday agents as well as the national bank which originated the loans.  <u>Id.</u> at 872-73.  The defendants removed the case on the basis

---

[11]  To counter these authorities, Petitioners rely primarily on <u>Krispin v. May Department Stores</u>, 218 F.3d 919 (8th Cir. 2000).  In <u>Krispin</u>, the court held that usury claims against a department store were subject to complete preemption under the NBA because the credit card accounts at issue had been assigned to a wholly owned national bank subsidiary of the store, and it was the bank, not the store, that "issues credit, processes and services customer accounts, and sets such terms as interest and late fees."  218 F.3d at 924.  <u>Krispin</u> is not the law of this Circuit and, for the reasons cited by the Court in <u>BankWest</u>, is distinguishable from this case. <u>See</u> <u>BankWest</u>, 324 F. Supp. 2d at 1349 ("In this case, unlike the department store and its national bank subsidiary in <u>Krispin</u>, the Banks and their [payday store] Agents are completely separate and independent entities.  Nothing in <u>Krispin</u> suggests that application of the [PayDay Statute] to the separate and independent non-bank Agents under the circumstances prescribed by the [statute's] de facto lender provisions implicates the Banks or their rights under the federal banking laws.").  <u>Cf.</u> <u>Colorado</u>, 188 F. Supp. 2d at 1284-85 (distinguishing <u>Krispin</u> because of the parent-subsidiary relationship between the store and the bank).

of complete preemption under the NBA.  Id. at 873.  The district court denied the

defendants' subsequent motion to compel arbitration, and the defendants appealed.

Id.

On appeal, the plaintiff argued that removal was not appropriate because the

district court lacked subject-matter jurisdiction.  Id. at 873 n.3.  Specifically, she

argued that because her state-law usury claims were brought primarily against the

payday agents, not the national bank, complete preemption under the NBA did not

apply.  Id.  The Eleventh Circuit rejected this argument, holding that because the

plaintiff chose to name a national bank as a defendant, complete preemption

applied and removal was proper:

> Jenkins attempts to evade the Supreme Court's holding in
> [Beneficial National Bank v. Anderson] by contending her
> usury claims were brought primarily against First
> American, not [First National Bank in Brookings
> ("FNB")].  She argues FNB was only included in her
> complaint because she was seeking a declaratory
> judgment finding FNB to be a "sham" lender.  Her
> complaint, however, expressly named both First
> American and FNB as Defendants and charged them both
> with usury.  The complaint consistently used the plural
> form of "Defendants."  She asserted that "Defendants
> violated" Georgia usury laws, and that she was "entitled
> to recover from Defendants all interest charges paid by
> [her]."  Because Jenkins charged a national bank with
> violating Georgia usury laws, removal was proper.

-28-

Id.  Although the court did not address whether the NBA's complete preemption

would have applied in the absence of a named national-bank defendant, its

emphasis on the plaintiff's inclusion of the national bank is consistent with the

district court holdings outlined above.[12] [13]

_____

[12]  The Court's decision is further supported by the panel decision in
BankWest.  In that decision, the majority held that even if the PayDay Statute's
direct regulation of the conduct of in-state agents had an indirect effect on the terms
under which an out-of-state bank can arrange for in-state agents to procure payday
loans, this indirect effect did not implicate Section 27, and the statute therefore was
not defensively preempted.  BankWest, 411 F.3d at 1305-06.  The BankWest
court's distinction between regulation of out-of-state banks and regulation of in-
state payday agents of such banks supports the Court's conclusion that
Respondents' state-law usury claims are outside of the class of claims subject to
complete preemption under Section 27, even if there was complete preemption
under Section 27.  On December 28, 2005, the Eleventh Circuit granted the
BankWest appellants' motion for rehearing en banc, vacating its previous panel
decision.  See Bankwest, Inc. v. Baker, No. 04-12420, --- F.3d ----, 2005 WL
3534218 (11th Cir. Dec. 28, 2005).  Accordingly, the Court does not rely on the
panel decision in reaching its conclusion in this case.

[13]  Both the district court and the initial panel in BankWest found that state-
law usury claims against the in-state payday agents are not defensively preempted
by Section 27.  See 324 F. Supp. 2d at 1351; 411 F.3d at 1306-09.  If the Eleventh
Circuit, sitting en banc, reaches the same conclusion, this would provide additional
support for the Court's determination that such claims are not subject to complete
preemption under Section 27.  See Cotton, 402 F.3d at 1281 (holding that cases
addressing defensive preemption are helpful in examining complete preemption,
since "if it appears that a claim is not even defensively preempted, then it will not be
completely preempted either").

Petitioners fail to demonstrate that Section 27 completely preempts state-law usury claims against state-chartered banks, and fails to demonstrate that Respondents' state-law usury claims against Petitioners First American and FAS fall within the class of claims subject to complete preemption under Section 27. Accordingly, Petitioners' second alleged basis for federal-question jurisdiction here -- complete preemption under Section 27 -- is without merit.[14]

### C.    Diversity Jurisdiction

Finally, Petitioners argue that the Court has subject-matter jurisdiction over their claims under the FAA because the requirements for diversity jurisdiction under 18 U.S.C. § 1332 are satisfied here.  (Pet'rs' Opp'n to Mot. to Dismiss at 23-25.) Section 1332 provides that this Court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28

---

[14]  Of course, that the Court finds Respondents' claims are not completely preempted by Section 27 does not prejudice Petitioners' ability to assert defensive preemption as a defense in the State-Court Action or any related arbitration proceedings.  See Cotton, 402 F.3d at 1292 ("[I]f a district court remands to state court claims that are not completely preempted, the defendant may still attempt to raise [ordinary preemption] as a defense in the state court.").

U.S.C. § 1332(a).  It is undisputed that complete diversity exists in this case.  The

parties disagree, however, regarding whether the amount-in-controversy

requirement is satisfied.

Petitioners assert two theories in support of their argument that the matter in

controversy here -- the enforceability of the Arbitration Agreements -- exceeds

$75,000.  First, Petitioners assert that the amount-in-controversy requirement is

satisfied because the cost of litigating the State-Court Action would exceed several

hundreds of thousands of dollars.  Petitioners do not cite any authority to support

its argument that the amount-in-controversy is ascertained by evaluating the costs

of litigating the underlying claims.  This absence of authority is understandable

considering this argument has been uniformly rejected by circuit courts and

commentators.  Particularly instructive is the Seventh Circuit's discussion of this

argument in America's MoneyLine Inc. v. Coleman, 360 F.3d 782 (7th Cir. 2004):

> MoneyLine contends that the object of this Section 4
> litigation is to compel arbitration; the value of this
> litigation is the value of enforcing the Arbitration Rider
> and avoiding class litigation in the state court.  As a
> practical matter, obtaining such an order would permit
> MoneyLine to avoid financing an expensive class action
> in state court and, instead, to arbitrate individually Ms.
> Coleman's claim.  It points out that proceeding with the
> arbitration would save it significant costs, including lost
> productivity and compensation for employees assisting

-31-

> counsel.  This amount, submits MoneyLine, has the potential to exceed $75,000.
>
> In urging us to accept its theory on the appropriate measure of a possible recovery, MoneyLine asks us to reject the settled law of this circuit and of the other circuits. We have adhered to the rule that the value of the object of the litigation is the "pecuniary result" that would flow to the plaintiff (or defendant) from the court's granting the injunction or declaratory judgment. In the context of actions to compel arbitration, we have adhered to the rule that, in order to ascertain whether the jurisdictional amount for the diversity statute has been met, the appropriate focus is the stakes of the underlying arbitration dispute.

Id. at 786. Cf. 13B Charles Alan Wright et al., Federal Practice & Procedure: Jurisdiction § 3569, at 172-73 (2d ed. 1984) ("[T]he amount is measured by the possible award that might reasonably result from an arbitration.").

Second, Petitioners argue the amount in controversy here exceeds $75,000 based on the attorneys' fees sought by Respondents in the State-Court Action in connection with their claims under the Georgia Payday Lending Statute, O.C.G.A. § 16-17-1 et seq., (the "PayDay Statute").  (Pet'rs' Opp'n to Mot. to Dismiss at 24-25.)[15]  Whether the amount-in-controversy requirement is satisfied based on the

---

[15]  Petitioners do not argue the damages sought by Respondents in the State-Court Action by themselves exceed $75,000, presumably because Respondents in their complaint expressly disavow any claim for damages in the aggregate for the

attorneys' fees sought by Respondents depends on how an award of attorneys' fees under the PayDay Statute is attributed to the members of the putative class.  If the award is viewed in the aggregate, with the total amount attributed to each class member, then the amount in controversy exceeds $75,000 and diversity jurisdiction exists here.  If the award is divided *pro rata* among the members of the putative class, then the amount in controversy is not satisfied and there is no diversity jurisdiction.[16]

The Eleventh Circuit's decision in <u>Cohen v. Office Depot, Inc.</u>, 204 F.3d 1069 (11th Cir. 2000), is controlling.  In <u>Cohen</u>, the court examined how an award of attorneys' fees under certain Florida statutes should be attributed to each class member for amount-in-controversy purposes.  <u>Id.</u> at 1080.  Construing its previous decisions regarding attorney fee awards, the court held that

> a statutory claim for attorney fees may not be considered
> in the aggregate for amount in controversy purposes, at

_____

individual plaintiffs or any member of the putative class in excess of $75,000, exclusive of interest and costs.  (<u>See</u> <u>Strong</u>, 1:04-cv-02610-WSD, [1] Prayer for Relief.)

[16]  Neither party contends that the potential attorneys' fees award under the PayDay Statute will be so large that, even when divided *pro rata* among the putative class members, it would cause the total amount in controversy to exceed $75,000 per class member.

> least not when both of these factors are present:  (1) the
> class members have a "separate and distinct" right to
> recover attorney fees under the relevant statute; and
> (2) state law provides that the statutory attorney fees
> serve to compensate the class members for their injuries.

Id. at 1081-82.  Applying this test, the court held that the statutory claim for

attorney fees at issue in that case could not be considered in the aggregate:

> Because the attorney fees authorized by the Florida
> statutes in this case serve to compensate plaintiffs for
> losses resulting from allegedly unlawful business
> practices, and because claims for those fees could be
> asserted by the class plaintiffs in individual suits, we
> conclude that the claimed fees do not constitute "a single
> title or right in which [the class members] have a common
> and undivided interest."

Id. at 1082 (quoting Snyder v. Harris, 394 U.S. 332, 335 (1969)).

The Eleventh Circuit reached a similar result in Darden v. Ford Consumer

Finance Co., 200 F.3d 753 (11th Cir. 2000).  Darden was a class action in which

the plaintiffs sought damages and attorneys' fees in connection with the alleged

unauthorized sale of credit life insurance in Georgia.  Id. at 754-55.  The case

originally was filed in state court, but was removed to federal court on the basis of

diversity jurisdiction.  Id.  Because the plaintiffs disclaimed any damages in excess

of $75,000, the sole jurisdictional issue for the Court of Appeals to decide was

"whether all of the [plaintiffs'] shares of any potential attorneys' fees awarded

-34-

under Georgia's RICO statute may be aggregated to satisfy the amount-in-

controversy requirement for diversity jurisdiction."  Id. at 756.  Relying on the same

factors cited in Cohen, the court held that an award of attorneys' fees under

Georgia's RICO statute could not be aggregated:

> After review, we hold that each Plaintiff's share of the
> attorneys' fees recoverable under Georgia's RICO statute
> may not be aggregated to satisfy the
> amount-in-controversy requirement because under
> Georgia law each individual Plaintiff has a separate and
> distinct statutory right or claim to recover those
> attorneys' fees, and Georgia law provides that those fees
> are to compensate the injured Plaintiff.  The Plaintiffs here
> are joining to enforce their individual rights to recover
> attorneys' fees as part of their compensatory damages;
> they are not joining to enforce a single right in which they
> have a common and undivided interest and are not
> seeking to deduct sums as attorneys' fees from a
> common fund.

Id. at 758-59.

Like the statutes at issue in Cohen and Darden, the PayDay Statute authorizes

claims for attorneys' fees in individual suits:  "In a successful action to enforce the

provisions of this chapter, a court shall award a borrower, or class of borrowers,

costs including reasonable attorneys' fees."  O.C.G.A. § 16-17-3.  Petitioners argue

that Respondents' claimed fees must be considered in the aggregate because,

unlike the statutes at issue in Cohen and Darden, the PayDay Statute provides for

an award of fees to the class as a whole.  (Pet'rs' Opp'n to Mot. to Dismiss at 24-25.)  Petitioners argue the statute's phrase "a class of borrowers" should be construed to alter the nature of an award of attorneys' fees in the class-action setting such that Respondents' right to attorneys' fees is transformed from an individual right to a right in which they have a common and undivided interest.  (See id.)

Petitioners' argument is without merit.  The focus of the Cohen and Darden decisions was the right of the class members to recover attorneys' fees in individual lawsuits.  This right is undisputably present here.  Petitioners fail to offer any support for their position that the phrase "class of borrowers" should be read to transform the nature of the attorneys' fee award under the statute.  This language simply tracks the language of the preceding sentence, which provides that "[a] civil action under [this statute] may be brought on behalf of an individual borrower or on behalf of an ascertainable class of borrowers," see O.C.G.A. § 16-17-3, and is more plausibly read as simply clarifying that attorneys' fees are available in both individual and class-action lawsuits.[17]  Accordingly, the Court finds that the

---

[17]  It is undisputed that the claimed attorneys' fees here satisfy the second element of the test under Cohen, namely, that the claimed fees under the PayDay Statute are designed to compensate the class members for their injuries.  Petitioners

requirements for diversity jurisdiction are not satisfied here, and that Petitioners'

claims must be dismissed for lack of subject-matter jurisdiction.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Petitioners' Motion to Extend Time [5] is

**GRANTED** *NUNC PRO TUNC*.

**IT IS FURTHER ORDERED** that Petitioners' Motion Requesting

Substitution of Exhibit B to Petitioners' Verified Petition to Compel Arbitration and

Stay Judicial Proceedings [14] is **GRANTED**.  The Clerk of Court is

**DIRECTED** to **STRIKE** the original Exhibit B to Petitioners' Notice of Removal

---

imply that both of the elements listed by the court must be present to attribute an award of attorney fees *pro rata* among the class members.  (Pet'rs' Opp'n to Mot. to Dismiss at 24.)  This argument ignores the plain language of the <u>Cohen</u> decision. In the footnote immediately following the portion of the opinion in which the Eleventh Circuit set out the two-factor test, the court expressly stated that "[b]ecause both factors are present in this case, we need not decide whether either one standing alone would prevent aggregation of attorney fees to satisfy the amount in controversy."  <u>Cohen</u>, 204 F.3d at 1082 n.15.  Like the court in <u>Cohen</u>, the Court finds that both factors are present here, and therefore it expresses no opinion regarding whether the second factor, standing alone, is sufficient to prevent aggregation.

and **INSERT** in its place the redacted version of Exhibit B attached to Petitioners'

Motion.

      **IT IS FURTHER ORDERED** that Respondents' Motion to Dismiss [3] is

**GRANTED**.  This case is **DISMISSED** and the Clerk of Court is **DIRECTED**

to close this matter.


      **SO ORDERED**, this 7th day of February, 2006.


                       _____
                       WILLIAM S. DUFFEY, JR.
                       UNITED STATES DISTRICT JUDGE